UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank Douglas TEAL, Frances Katherine
Carpenter, a/k/a Kathy Ann Summers,
Defendants-Appellants.

No. 77–5729.

United States Court of Appeals,
Fifth Circuit.

Oct. 20, 1978.

Rehearing Denied Nov. 16, 1978.

Andrew L. Vogel, Dee Lee Thomas, Jr.,
Fort Worth, Tex., for Teal.

Frank D. McCown, Fort Worth, Tex., for
Carpenter.

Kenneth J. Mighell, U. S. Atty., Fort
Worth, Tex., Arnaldo Cavazos, Harry Koch,
Asst. U. S. Attys., Dallas, Tex., for plain-
tiff-appellee.

Before GEWIN, RONEY and GEE, Cir-
cuit Judges.

GEWIN, Circuit Judge:

Frances Katherine Carpenter and Frank
Douglas Teal were found guilty by a jury

and convicted of conspiracy to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846. In these consolidated appeals both appellants challenge the sufficiency of the evidence to support their convictions. We affirm.

At approximately 7:35 p. m. on March 9, 1977, Walter Fisher, special agent with the Drug Enforcement Administration, and Richard Pendergraft, a paid government informant, met appellant Teal at Jester's Court, a bar in Fort Worth, Texas. Pendergraft had arranged the meeting. When Fisher and Pendergraft entered the bar, Teal was using a telephone. The two men sat down at a table and Teal joined them a few minutes later. Pendergraft introduced Teal to Fisher and a discussion ensued, the general subject of which was narcotics. After about five minutes, Teal arose from the table and made a second telephone call.

Approximately ten minutes later defendant Mrs. Carpenter entered the bar and joined the three men. Teal introduced Fisher and Pendergraft to Mrs. Carpenter by saying, "This is Richard and Walt, the people I was telling you about", or other words to that effect.

A conversation ensued and Mrs. Carpenter informed Fisher and Pendergraft that she could supply them with heroin and cocaine through sources she knew in Los Angeles, California. She stated that Fisher and Pendergraft would have to go to Los Angeles to purchase an initial sample quantity of heroin, and explained that she would contact her California sources that night and arrange the purchase. Mrs. Carpenter offered to escort them to California. The two men and Mrs. Carpenter agreed that she would be paid $1,000.00 for the introduction to the California sources. Teal was present at the table during the entire conversation, but did not participate.

On March 14, 1977, Mrs. Carpenter's husband Sammie Lee Carpenter,[1] met with Fisher and Pendergraft. At the meeting, Mr. Carpenter planned a trip to California for himself and the two men for the following day to purchase an initial sample quantity of heroin. During the meeting Mr. Carpenter stated that he has spoken by phone to the Los Angeles sources on the evening of Teal, Fisher, and Pendergraft's meeting with Mrs. Carpenter and that the sources had assented to make the sale. Fisher and Pendergraft agreed to pay Mr. Carpenter the $1,000.00 commission promised Mrs. Carpenter. Two days later Fisher paid at least a portion of the money to Mr. Carpenter.

On March 15, 1977, Mr. Carpenter, Fisher and Pendergraft flew to Los Angeles where Agent Fisher, pursuant to Mr. Carpenter's directions, purchased two ounces of heroin from a Mr. Coleman.[2] Upon their return flight home, the three were met by Mrs. Carpenter at the Fort Worth-Dallas airport. Mrs. Carpenter asked Agent Fisher how the deal had gone and if he was satisfied with it. When he gave a negative response, she commented that "she hoped things would go better in the future, that maybe next time around it would be a little bit easier."

On April 6, 1977 Agent Fisher again met with defendant Teal at Jester's Court. They discussed the purchase of heroin in Los Angeles. Fisher gave Teal a $100 bill for introducing Fisher to Mrs. Carpenter. At the same time the agent expressed his dissatisfaction with the sale and the quantity of the heroin purchased. Teal accepted the $100, commenting "that was not very much money for him."

Appellants' sole contention is that because of the insufficiency of the evidence against them the district court erred in denying their motions for judgments of acquittal. More specifically, both Teal and Mrs. Carpenter argue that the government failed to adduce sufficient evidence at trial to establish their participation in a conspiracy. This court has held that the standard to be applied in determining the sufficiency of the evidence is as follows:

1. Sammie Lee Carpenter was indicted as a co-conspirator and pled guilty.

2. The true identities of Coleman and the other California conspirators are still unknown.

On a motion for judgment of acquittal, the test is whether, taking the view most favorable to the Government, a reasonabiy-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.

.　　.　　.　　.　　.

The same test  .  .  .  should apply whether the evidence is direct or circumstantial. [W]e must accept as established all reasonable inferences that tend to support the action of the jury, and any conflicts in the evidence must be resolved in favor of the jury verdict.

*United States v. Warner,* 441 F.2d 821, 825, 831 (5th Cir. 1971), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971), *quoted in United States v. Carrillo,* 565 F.2d 1323, 1325 (5th Cir. 1978).

■ The essential elements of the crime of conspiracy are an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement. *United States v. Gutierrez,* 559 F.2d 1278, 1280 (5th Cir. 1977); *United States v. Barrerra,* 547 F.2d 1250, 1256 (5th Cir. 1977); *United States v. Isaacs,* 516 F.2d 409, 410 (5th Cir. 1975), *cert. denied,* 423 U.S. 936, 96 S.Ct. 295, 46 L.Ed.2d 269 (1975). Once the existence of a conspiracy is established, however, only slight evidence is required on appellate review to establish that an individual participated in the conspiracy. *United States v. Dearden,* 546 F.2d 622, 624 (5th Cir. 1977); *United States v. Warner,* 441 F.2d 821, 831 (5th Cir. 1971), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). This standard of review is applicable where the defendants are "clearly connected to the conspiring group or are found acting in such a manner as unmistakably to forward its purposes. In such instances .  .  . slight additional evidence suffices to base an inference that one who had been shown beyond a reasonable doubt to be a participant was as well a knowing participant." *United States v. Alvarez,* 548 F.2d 542, 544 (5th Cir. 1977), *quoted in United States v. Trevino,* 556 F.2d 1265, 1268 (5th Cir. 1977).

■ Appellants do not contest the existence of a conspiracy to possess and distribute drugs, but only their connection with the common scheme. The evidence clearly supported a finding by the jury that two or more persons agreed to execute an illegal sale of drugs and committed overt acts in furtherance of that purpose. Mrs. Carpenter on March 9 agreed to arrange a sale of heroin and cocaine through her California sources; her husband, Sammie Lee Carpenter, contacted the same sources that same night and the sources agreed to make the sale. Mr. Carpenter traveled to California with Fisher and Pendergraft and arranged the meeting between Fisher and Mr. Coleman and the subsequent sale. Mr. Carpenter received a portion of the $1000 promised Mrs. Carpenter for her services and defendant Teal received $100.00 for the introduction to Mrs. Carpenter. Proof of conspiracy normally depends upon "inferences drawn from relevant and competent circumstantial evidence  .  .  .  ." *Warner, supra* at 830, and the jury's determination here that a conspiracy existed was a reasonable inference from the facts.

■ With the conspiracy established, the paramount question remaining is whether the requisite "slight evidence" was adduced to establish that appellants' participation in the scheme was as well knowing participation. *See Alvarez, supra* at 544. Taking the case against each appellant in turn, it is clear that the evidence presented against Mrs. Carpenter was more than sufficient to show that she was an active, knowing principal in the conspiracy. In the March 9 meeting, Mrs. Carpenter devised an overall plan or pattern of events for the sale and delivery of narcotics. The arrangements were then carried out by her husband. She agreed to supply heroin from her Los Angeles connections and her husband made the trip to obtain the heroin. She agreed to accept $1,000 for her services and her husband later received part of it. She offered to escort Fisher and Pendergraft to California and her husband escorted them. She agreed to telephone the California sources on the night of March 9 and arrange a

meeting time and her husband made the call that night and organized the trip. As formerly stated, Mrs. Carpenter met her husband, Pendergraft and Fisher at the airport, upon their return and asked Fisher how the deal had gone. When he expressed his dissatisfaction, she responded that she hoped things would go better in the future.

We believe that the evidence of Mrs. Carpenter's complicity is substantial and fully supported a permissible inference by the jury that she was a knowing and active co-conspirator. The fact that her husband performed most of the acts in the scheme does not exculpate Mrs. Carpenter. The jury reasonably could have concluded that Mrs. Carpenter concocted the transaction, and that her husband participated in implementing the conspiratorial plan. Her role as an active participant in the conspiracy with a direct interest in its result is further evidenced by her presence and statements to Fisher at the airport.

■ The evidence against Teal, while less compelling than that adduced against Mrs. Carpenter, is nevertheless sufficient to support his conviction.[3] On March 9, Agent Fisher and Pendergraft went to the Jester's Court in order to meet with Teal. They discussed narcotics with him. Teal then made a telephone call. Approximately ten minutes later Mrs. Carpenter arrived. Teal introduced her by saying: "This is Richard and Walt, the people I was telling you about", or words to that effect. Though Fisher had never met Mrs. Carpenter she immediately began to discuss narcotics and her ability to supply them to Fisher and Pendergraft. Teal was present throughout this discussion. Approximately three weeks after Fisher and Pendergraft purchased a sample of heroin in accordance with the March 9 conversation, Fisher met again with Teal. Fisher explained his dissatisfaction with the sale and gave Teal only

$100.00 as a commission for his introduction to Kathy Carpenter. As earlier indicated, Teal responded "that wasn't very much money for him."

From this evidence, considered as a whole, the jury was entitled to infer that Teal introduced Fisher and Pendergraft to Mrs. Carpenter for the purpose of supplying them with heroin and that the words of introduction referred to Teal's telling Mrs. Carpenter that Fisher and Pendergraft desired to purchase heroin through her sources. Moreover, the jury reasonably could have concluded from the $100.00 payment that Teal was taking credit for the sale as the fruit of his introduction to Mrs. Carpenter.

Appellant Teal contends that his introduction of Mrs. Carpenter and his receipt of the $100 commission are insufficient to support his conviction because there was no proof of a conspiratorial agreement between him and any alleged co-conspirator. This argument eschews the rule that an agreement to seek a common illegal purpose ordinarily must be inferred from circumstantial evidence. *Warner, supra* at 830; *Trevino, supra* at 1268. The evidence indicated that a common plan to distribute drugs existed between Mrs. Carpenter, her husband and their Los Angeles connections. Once a conspiracy was established, as here, and Teal was clearly connected to it by his presence and actions at Jester's Court on March 9, 1977 and April 6, 1977, only slight evidence was required to prove his knowing complicity. *United States v. Bass,* 562 F.2d 967, 969 (5th Cir. 1977); *see United States v. James,* 528 F.2d 999, 1011–12 (5th Cir. 1976). Teal's introduction of Mrs. Carpenter was an act which furthered the conspiracy and suggested Teal's desire to promote its objective, and the $100 commission showed that Teal, with knowledge of the

---

**3.** In his brief appellant Teal makes the following assertion:

While the evidence presented against the Appellant might sustain a conviction for the substantive count of distribution by reason of the evidence that he aided and abetted the distribution, his conviction of conspiracy to distribute, if allowed to stand, would create just such a dragnet of the conspiracy laws as the Supreme Court was addressing.

Appellant's Brief pp. 23–24.

conspiracy, received a benefit for making the drug sale possible.[4]

We are satisfied that the facts, when viewed in the light most favorable to the government, permit the inference that Teal was a knowing participant in the conspiracy which developed from his introduction of Mrs. Carpenter to Fisher and Pendergraft. The government presented sufficient evidence necessary to establish his active involvement in the conspiracy and to hold him accountable for the acts of the co-conspirators.

Judgment AFFIRMED.

---

4. Appellants cite *United States v. Hysohion,* 448 F.2d 343 (2d Cir. 1971) for the proposition that a defendant's informing a willing buyer of how to make contact with a willing seller is insufficient evidence to show a conspiratorial agreement between the defendant and the seller. The Second Circuit in so holding, based its decision upon the district court's conclusion that the government had failed to prove that the defendant in that case was more than a "casual facilitator" of the sale, who happened to know a source of drugs. 448 F.2d at 348–49. Here, the government's case is significantly stronger. In the instant case the prosecution proved a conspiracy apart from appellants Teal and Mrs. Carpenter, and further demonstrated their connection with its members and further-

ance of its goal. Therefore, only slight evidence was required to show appellants' knowing participation therein. In *Hysohion* no conspiracy separate from the defendants was established. Moreover, the evidence in the case at bar indicated that Teal and Mrs. Carpenter were more than "casual facilitators" of a sale. The jury reasonably could have concluded that both were involved in the careful planning of the narcotics sale, both were responsible for the sale and both had a financial stake in the transaction.